Malvika A. Sinha (038046)
Kelleen Mull (036517)
**COPPERSMITH BROCKELMAN PLC**
2800 North Central Avenue, Suite 1900
Phoenix, Arizona 85004
Tel.: (602) 381-5493
msinha@cblawyers.com
kmull@cblawyers.com

Michael T. Renaud (*pro hac vice forthcoming*)
Adam S. Rizk (*pro hac vice forthcoming*)
Matthew A. Karambelas (*pro hac vice forthcoming*)
**MINTZ, LEVIN, COHN, FERRIS,**
     **GLOVSKY AND POPEO, P.C.**
One Financial Center
Boston, Massachusetts 02111
Tel.: (617) 542-6000
MTrenaud@mintz.com
ARizk@mintz.com
MAKrambelas@mintz.com

*Counsel for Plaintiff JUUL Labs, Inc.*

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| JUUL Labs, Inc., | Case No. |
| Plaintiff, | **COMPLAINT FOR PATENT INFRINGEMENT** |
| v. | **JURY TRIAL DEMAND** |
| NJOY, LLC, NJOY Holdings, Inc., Altria Group, Inc., Altria Group Distribution Company, and Altria Client Services LLC, | |
| Defendants. | |

1  **I.    INTRODUCTION**

2      1.      Plaintiff JUUL Labs, Inc. ("JLI" or "Plaintiff"), by and through its

3  undersigned counsel, respectfully files this civil action for infringement of U.S. Patent

4  No. 12,156,533 (the "Asserted Patent" or "'533 Patent") arising under the patent laws of

5  the United States, 35 U.S.C. §§ 1 *et seq.*

6      2.      As discussed in Section II of this Complaint, JLI was founded in 2007 with

7  the goal of developing a less harmful alternative to traditional combustible cigarettes.

8  Through years of effort across product design, engineering, and scientific research, and

9  over a billion dollars invested domestically, JLI accomplished that goal by developing

10 technology that revolutionized a category of vaporizing products known as electronic

11 nicotine delivery system ("ENDS") products.

12     3.      As part of JLI's 2020 applications to the FDA, for example, JLI submitted

13 over 110 scientific studies in support of its submissions regarding the JUUL System.

14 Following the FDA's rigorous evaluations of the data, the FDA has decided that a

15 marketing granted order ("MGO") for the JUUL System was "appropriate for the

16 protection of public health[.]" *See, e.g.*,

17 https://www.accessdata.fda.gov/static/searchtobacco/juul/MRKT_ORDR_LTR_Multiple

18 _STNs_JUL2025_Redacted.pdf (accessed August 7, 2025). JLI is the only company in

19 receipt of a marketing granted order from the FDA for ENDS products, without also

20 selling combustible cigarettes.

21     4.      JLI is a global leader in the ENDS industry, where it is known for

22 numerous, meaningful technological advancements. JLI continues to invest heavily in

23 innovation to sustain existing products and develop new ones. Unfortunately, JLI's

24 innovation and resulting success has bred numerous entities who unlawfully use JLI's

25 patented technology.

26     5.      The defendants are NJOY, LLC and NJOY Holdings, Inc. (collectively

27 "NJOY"); and Altria Group, Inc., Altria Group Distribution Company, and Altria Client

28 Services LLC (collectively "Altria") (all collectively "Defendants").

6.      While JLI welcomes fair competition in its mission to switch adult smokers from combustible cigarettes while addressing underage use, JLI is compelled to take this action to prevent Defendants from continuing to sell products which infringe on JLI's foundational patented technology. JLI has previously filed five International Trade Commission patent cases and related district court complaints in the past seven years to stop the unlawful sale and importation of infringing vaporizer products. *See Certain Electronic Nicotine Delivery Systems and Components Thereof*, Inv. No. 337-TA-1139; *Certain Cartridges for Electronic Nicotine Delivery Systems and Components Thereof*, Inv. No. 337-TA-1141; *Certain Vaporizer Cartridges and Components Thereof*, Inv. No. 337-TA-1211; and *Certain Vaporizer Devices, Cartridges Used Therewith, and Components Thereof*, Inv. No. 337-TA-1368. In each of these ITC Investigations, the Commission found a violation and issued remedial orders.

7.      Defendants are now repeating this pattern of infringement through products that infringe on JLI's intellectual property asserted in this action.

8.      Conversely, Defendants filed their own International Trade Commission complaint against JLI in 2023. Earlier this year, the ITC found no violation by JLI, and Defendants then voluntarily dismissed their appeal of the ITC's finding that JLI did not infringe Defendants' patents. However, instead of ending ongoing litigation after voluntarily dismissing their appeal, on July 11, 2025, Defendants notified JLI that they intend on reactivating the parallel litigation against JLI in the U.S. District Court, on the same patents asserted against JLI in the ITC that were found to be not infringed by JLI.

9.      Indeed, Defendants, including their parent Altria, a giant in the combustible tobacco industry, has recognized the power of JLI's innovation and the disruption to Defendants' core business. As a prior investor in JLI, Altria had full access to study JLI's IP portfolio, including its patents and pending applications, and has praised both the technology at issue in this case as a key driver of the JUUL System's success, as well as JUUL's ability to disrupt the traditional tobacco market.

10.    This Complaint is based on Defendants' unlawful infringement of the Asserted Patent, including one or more of at least the following claims:

| Asserted Patent | Claims Asserted Against Defendants (independent claims in bold) |
|---|---|
| U.S. Patent No. 12,156,533 | **1**, 2-8 and 10 |

## II.    PLAINTIFF

11.    JUUL Labs, Inc. is a privately held corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 1000 F Street NW, Washington, D.C. 20004.

12.    After years of research and over a billion dollars invested domestically, JLI has become one of the world's leading ENDS companies.

### A.    JLI's History

13.    JLI was founded and incorporated in 2007 with the goal of transitioning the world's billion adult smokers away from combustible cigarettes.[1] Use of combustible cigarettes remains the leading cause of preventable death in the world and cigarettes are widely acknowledged to kill up to or more than 50% of their long-time users.[2]

14.    When JLI was founded, the health hazards of smoking combustible cigarettes were well understood. Smoking was and still is the number one cause of preventable death in the United States. *See Health Risks of Smoking Tobacco*, American Cancer Society (accessed August 7, 2025), https://www.cancer.org/cancer/risk-prevention/tobacco/health-risks-of-smoking-tobacco.html. Smoking not only steals valuable years of life but also has a significant economic cost. The Centers for Disease Control and Prevention estimates that "[c]igarette smoking cost the United States more than an estimated $600 billion in 2018," including "[m]ore than $240 billion in health care spending[,] [n]early $185 billion in lost productivity from smoking-related illnesses

---

[1] As described more fully in the remaining paragraphs in this Section, JLI began as a company called "Ploom, Inc." Ploom, Inc. was later renamed to "PAX Labs, Inc.," and PAX Labs, Inc. was later renamed to "JUUL Labs, Inc."

[2] *See Tobacco: Key Facts*, World Health Organization (June 25, 2025, accessed July 18, 2025), https://www.who.int/news-room/fact-sheets/detail/tobacco ("Tobacco kills up to half of its users who don't quit.").

and health conditions[,] [and] [n]early $180 billion in lost productivity from smoking-related premature death …." *See Smoking & Tobacco Use: Economic Trends in Tobacco*, Centers for Disease Control and Prevention (accessed August 7, 2025), https://www.cdc.gov/tobacco/php/data-statistics/economic-trends/?CDC_AAref_Val=https://www.cdc.gov/tobacco/data_statistics/fact_sheets/economics/econ_facts/index.htm.

15.    After studying Product Design in graduate school at Stanford University, JLI's founders, James Monsees and Adam Bowen, applied their knowledge of design and engineering to the challenge of developing an alternative to combustible cigarettes through various forms of non-combustible nicotine vaporizer products. Both smokers at the time, they experienced a lack of compelling alternatives to smoking for adults who wanted to enjoy nicotine but wanted to move away from traditional combustible cigarettes.

16.    ENDS technology represented a potential alternative for reducing the exposure of adult smokers—and those around them—to the toxic compounds released by use of combustible cigarettes.[3] ENDS products deliver nicotine, but do so without generally burning tobacco and are thus noncombustible nicotine products. Studies have shown that switching from cigarettes to ENDS products can reduce exposure to certain toxic byproducts of smoking traditional cigarettes by up to 95% or more. Former FDA Commissioner Scott Gottlieb, M.D., explained that "it's primarily the combustion, which releases thousands of harmful constituents into the body at dangerous levels, that kills people." *See* Statement from FDA Commissioner Scott Gottlieb, M.D., FDA Newsroom (Sept. 12, 2018, accessed August 7, 2025), https://www.prnewswire.com/news-releases/statement-from-fda-commissioner-scott-gottlieb-md-on-new-steps-to-address-epidemic-of-youth-e-cigarette-use-300711284.html

[3] Terminology for electronic alternatives to combusted cigarettes can vary. As referenced herein, "ENDS" or Electronic Nicotine Delivery Systems includes various devices that deliver nicotine electronically, without combustion. While traditionally associated with liquid-based systems such as e-cigarettes or vaporizer products, this term also can encompass heat-not-burn (HNB) devices, as these also can electronically deliver nicotine.

17.    Initial ENDS products, however, proved unable to durably switch adult smokers' consumption of combustible cigarettes. Several factors contributed to low switching rates with early non-combustible devices (including early generation "cig-a-like" products), such as, *e.g.*, unreliability, poor device quality, form factor issues, complexity, maintenance required for some devices, and, most importantly, poor nicotine delivery, that failed to match the experience of consuming a combustible cigarette.

18.    During the course of their Master's thesis project in Product Design, and in an attempt to address these shortcomings, James and Adam experimented with harm reduction innovations for delivering nicotine without the combustion and associated toxins of burning tobacco, but in a more satisfying way than currently available ENDS products.

19.    In 2007, after finishing graduate school, James and Adam started a company called Ploom Inc. ("Ploom") to continue developing and commercializing combustion-alternative devices. Ploom Inc.'s first commercial product, the Ploom modelOne, was referred to as a "heat-not-burn" HNB product which heated a mixture of tobacco and other substances to a temperature below the combustion threshold. While the Ploom modelOne was innovative and well-received, it did not achieve widespread appeal, at least in part because it failed to provide a sufficiently satisfying nicotine delivery experience to entice smokers to switch from combustible cigarettes and to keep them switched. Ploom continued to develop further improvements to the HNB Ploom system, as well as a new HNB system, called the PAX One, capable of vaporizing loose-leaf substances, including tobacco.

20.    Around 2012, the engineers at Ploom focused attention on other ENDS systems, which used liquid solutions containing nicotine (often called "e-liquids"). Again, these e-liquid ENDS systems had significant shortcomings, particularly in delivering of nicotine to the user in a way that was satisfactorily similar to combustible cigarettes, thus limiting their potential to help smokers switch away from smoking. Recognizing these challenges, Adam began a variety of investigations in order to

determine the root issues with these prior systems.  One area of those investigations resulted in the surprising and revolutionary discovery that adding an organic acid to a vaporizable solution of nicotine (now often called a "nicotine salt") dramatically improved user experience and satisfaction, mimicking very closely the experience of a smoked combustible cigarette.

21.    Ploom changed its name to PAX Labs, Inc. ("Pax") in 2015, spinning off the Ploom brand and systems, and continued to innovate new and better designs for non-combustible nicotine delivery products.  In that same year, Pax revolutionized the market for ENDS products with the release of its signature product, the JUUL electronic nicotine delivery system (the "JUUL System"), which finally gave adult smokers a true viable alternative to traditional cigarettes.

22.    Through its many innovations in chemistry, industrial design, and technical engineering, the JUUL System disrupted the stagnant and failing category of non-combustible alternatives to combustible cigarettes.

23.    For example, industry observers have commented that JUUL's innovations in e-liquid chemistry amounted to a "Nicotine Salt Breakthrough." *See, e.g.*, Ethics, Society, and Technology Initiatives - The Evolution of Juul: A Case Study in Design, https://ethicsinsociety.stanford.edu/sites/ethicsinsociety/files/media/file/case_study_juul. pdf (accessed August 7, 2025).

24.    On June 30, 2017, Pax was renamed JUUL Labs, Inc.

**B.    The JUUL System**

25.    The JUUL System uses precision heating technology to aerosolize and deliver JLI's proprietary nicotine e-liquid formulation without combustion. It was designed to break away from the "round white stick" iconography associated with smoking and used a simple interface requiring no buttons, switches, or complex manipulation.  In addition, unlike early generation e-cigarette devices, which could not deliver nicotine in a way that replicated the experience of a combustible cigarette, JLI

carefully developed its proprietary e-liquid formulations and carefully engineered internal architecture to deliver a combustible cigarette-like experience.

26.    Defendants themselves have previously stated—in an International Trade Commission Investigation involving the same parties—that the "nicotine salts" formulations in JUUL's products, such as those in JUUL's proprietary e-liquid formulations, in combination with the products' design, have been "critical" to the success of modern e-vapor products. *See, e.g.*, *Certain Vaporizer Devices, Cartridges Used Therewith, and Components Thereof*, Inv. No. 337-TA-1368, Initial Post-Hearing Br. at 144 (June 12, 2024) (NJOY arguing that "[r]ecord evidence clearly show that ***nicotine salts are critical to and materially impact the functionality of the JUUL System***" (emphasis added)); *see also id.*, EDIS Doc. ID 821089, Hrg. Tr. at 1253:17 - 1254:1 (May 8, 2024) (public testimony of NJOY's technical expert witness, testifying that there are "features of the JUUL system that are important that are not claimed" in various patents asserted in 337-TA-1368, stating that, "it's my understanding that ***the size and form factor, the salts*** — … it was these other factors that seemed to be more, quote, [']***coextensive with the success of JUUL***['] than anything in these patents" (emphasis added)).

27.    NJOY's own President has also acknowledged the importance of JUUL's e-liquid formulation containing nicotine salts as being a "critical" factor to the success of JUUL's products. *See, e.g.*, *id.*, EDIS Doc. ID 830979, Hrg. Tr. at 831:8-16 (public testimony of NJOY President, testifying that nicotine salts in e-vapor products, including "JUUL," are "***critical to the success of the product***[,] that it contains [nicotine salts,] for satisfaction for cigarette consumers moving" off of cigarettes (emphasis added)). By acquiring NJOY and choosing to import foreign-made products that use this exact technology, Altria (and its subsidiary NJOY) directly infringe JLI's intellectual property including on what it has already conceded are JLI's foundational American innovations.

28.    The transformative design and operation of the JUUL System, coupled with JUUL's innovations in e-liquid chemistries, were unique advancements over previous,

much less successful, ENDS products that were difficult to use, unsatisfying, and/or inconsistent in their delivery of aerosolized nicotine. As a result of its ease of use and satisfying and reliable performance, the JUUL System quickly gained recognition among adult smokers. It has been and continues to be one of the best-selling ENDS products in the United States.

29.    The JUUL System comprises three primary and proprietary components: (i) a device body containing a rechargeable battery, control circuitry, and a receptacle for a cartridge ("JUUL Device"); (ii) a non-refillable cartridge (branded as a "JUULpod") that is specifically designed to be inserted into a  receptacle on the device body, has a resistive heater-based atomizer, and is pre-filled with a proprietary nicotine e-liquid formulation; and (iii) a charging dock that is specifically designed for charging the device body. When a user inhales through the mouthpiece of a JUULpod that has been inserted into the JUUL device body, the device rapidly heats to vaporize the nicotine salt e-liquid formulation, which recondenses to generate an aerosol that is ultimately inhaled by the user.

30.    By way of illustration, the JUUL System is generally shown in the renderings below:



31.    The JUUL System attained tremendous commercial success and acclaim, reportedly garnering around 60–70% of the overall tracked e-cigarette market in the U.S. in the years following its launch.

32.    JLI has since further innovated and created the JUUL2 System. Like the JUUL System, the JUUL2 System is comprised of three primary and proprietary components: (i) a device body containing a rechargeable battery, control circuitry, and a receptacle for a cartridge; (ii) a non-refillable cartridge (branded as a "JUUL2 pod") that

is specifically designed to be inserted into a  receptacle on the device body, has a resistive heater-based atomizer, and is pre-filled with a proprietary nicotine e-liquid formulation; and (iii) a charging dock that is specifically designed for charging the device body. The JUUL 2 System is designed, developed, and assembled in the United States, and, pending US FDA approvals, currently exported and sold outside of the United States.

33.    JLI is committed to providing quality products that perform consistently to JLI's specifications. JLI continues to invest in creating and maintaining strict manufacturing and quality standards for its products and relies on multiple safeguards, testing standards, and quality controls.

**III.    DEFENDANTS**

34.    On information and belief, NJOY, LLC is limited liability company organized under the laws of Delaware. On information and belief, NJOY LLC is "headquartered in Arizona[.]" *See, e.g.*, *Certain Vaporizer Devices, Cartridges Used Therewith, and Components Thereof*, Inv. No. 337-TA-1372, Complainant NJOY LLC's Petition for Review of the Initial Determination at 64 (Dec. 23, 2024); *Juul Labs Inc. et al. v. NJOY, LLC et al.*, Case No. 2:23-cv-1204, Dkt. No. 35, Joint Status Report (Feb. 7, 2025) (restating public posting of ITC final determination in relation to "'NJOY, LLC of Phoenix, Arizona'"). On information and belief, NJOY, LLC was acquired by Altria Group, Inc. on June 1, 2023, and is now a wholly owned subsidiary of Altria Group, Inc. *See* https://investor.altria.com/press-releases/news-details/2023/Altria-Completes-Acquisition-of-NJOY-Holdings-Inc.-Updates-2023-FullYear-Earnings-Guidance/default.aspx.

35.    On information and belief, NJOY Holdings, Inc. is a corporation organized under the laws of Delaware, with its principal place of business located at 9449 N. 90th Street, Suite 201, Scottsdale, Arizona 85258. *See, e.g.*, https://kando.tech/company/njoy-holdings-inc (accessed July 18, 2025) (listing location for NJOY Holdings, Inc. at "9449 North 90th Street Suite 201 Scottsdale, AZ 85258"); https://ecorp.azcc.gov/BusinessSearch/BusinessInfo?entityNumber=1921695 (accessed

July 18, 2025) (listing "NJOY HOLDINGS, INC," as having an address at "9449 NORTH 90TH STREET, SUITE 201, SCOTTSDALE, AZ, 85258, Maricopa County, USA"); *Juul Labs Inc. et al. v. NJOY, LLC et al.*, Case No. 2:23-cv-1204, Dkt. No. 35, Joint Status Report (Feb. 7, 2025) (restating public posting of ITC final determination in relation to "'NJOY Holdings, Inc. of Scottsdale, Arizona'"). On information and belief, NJOY Holdings, Inc. is the holding company for NJOY, LLC, the operating company. On information and belief, NJOY Holdings, Inc. was acquired by Altria Group, Inc. on June 1, 2023, and is now a wholly owned subsidiary of Altria Group, Inc. *See* https://investor.altria.com/press-releases/news-details/2023/Altria-Completes-Acquisition-of-NJOY-Holdings-Inc.-Updates-2023-Full-Year-Earnings-Guidance/default.aspx.

36.     On information and belief, Altria Group, Inc. is a corporation organized under the laws of the Commonwealth of Virginia, with its principal place of business located at 6601 West Broad Street, Richmond, Virginia 23230.

37.     On information and belief, Altria Group Distribution Company is a corporation organized under the laws of the Commonwealth of Virginia, with its principal place of business located at 6601 West Broad Street, Richmond, Virginia 23230. On information and belief, Altria Group Distribution Company is a wholly owned subsidiary of Altria Group, Inc., and provides sales and distribution services to Altria Group, Inc.'s operating subsidiaries, such as NJOY. *See* https://investor.altria.com/press-releases/news-details/2023/Altria-Completes-Acquisition-of-NJOY-Holdings-Inc.-Updates-2023-Full-Year-Earnings-Guidance/default.aspx (accessed August 7, 2025) ("NJOY's products will be distributed by Altria Group Distribution Company.").

38.     On information and belief, Altria Client Services LLC is a limited liability company organized under the laws of the Commonwealth of Virginia, with its principal place of business located at 6601 West Broad Street, Richmond, Virginia 23230. On information and belief, Altria Client Services LLC is a wholly owned subsidiary of Altria Group, Inc.

39.     As set forth below, on information and belief, Defendants, directly or indirectly, use in the United States, import into the United States, offer to sell and sell within the United States, vaporizer devices, such as nicotine delivery systems (ENDS), cartridges used therewith (sometimes referred to as "pods") that contain e-liquid nicotine salt formulations, and components of such devices and cartridges (cartridge housings, heater components (sometimes referred to as atomizers), chargers, batteries), and subassemblies of the foregoing that infringe the Asserted Patent.

40.     The products at issue include the NJOY Daily, as well as any other products which NJOY may be developing or preparing for commercialization in the U.S. market. For example, NJOY has stated that it has "already-developed" redesign variations of the NJOY Ace System which it has included in applications to the Food and Drug Administration (FDA). *See, e.g.*, NJOY Press Release, https://investor.altria.com/press-releases/news-details/2024/Altria-and-NJOY-Respond-to-ITC-Initial-Determination-in-Complaint-Against-NJOY/default.aspx (posted Aug. 27, 2024, accessed July 22, 2025) ("NJOY recently filed Substantial Equivalence (SE) Exemption requests with the FDA to allow NJOY to market an already-developed ACE product with minor modifications that we believe avoid three of the four JUUL patent claims at issue [in ITC Inv. No. 337-TA-1368]."); *see also, e.g.*, https://investor.altria.com/press-releases/news-details/2025/Altria-Reports-2024-Fourth-Quarter-and-Full-Year-Results-Provides-2025-Full-Year-Earnings-Guidance-Announces-New-1-Billion-Share-Repurchase-Program/default.aspx (accessed August 7, 2025) ("NJOY continues work on its product solution that addresses all of the patents at issue in the event the ITC's decision is not rejected by the Trade Representative."); https://www.stockinsights.ai/us/MO/earnings-transcript/fy25-q1-b7d2 (Altria Earnings Call (accessed August 7, 2025) ("[W]e had final design [for the Ace] for the last patent that we were found to be infringed upon. We'll continue to challenge and legalize, don't want you to think we're giving up the legal challenges. But we are close to having worked around all of the four patents that we were found to have infringed upon.").

NJOY has also stated on its website that "We're working to get [our NJOY Ace products] back in-market ASAP. We'll share updates on NJOY.com once we have more info." https://www.njoy.com/gtc/itc-update (accessed August 7, 2025).

41. For example, below are photographs of the packaging for NJOY Daily Devices:



Exhibit 4, at 1-2.

## IV. JURISDICTION AND VENUE

42. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1338(a).

43. Venue is proper in this district with respect to Defendants under 28 U.S.C. § 1391 and 28 U.S.C. § 1400(b). On information and belief, Defendants have committed acts of infringement in this District, directly and/or through intermediaries, by, among other things, making, using, offering to sell, selling, and/or importing products and/or

services that infringe the Asserted Patent, as alleged herein. On information and belief, Defendants have a regular and established place of business in this District. On information and belief, NJOY is headquartered in Arizona. On information and belief, for example, Altria employs numerous sales and account managers based in Arizona. *See, e.g.*, https://tobaccoreporter.com/2025/04/08/arizona-retailers-claim-they-were-duped-by-altria-rep/ (Apr. 8, 2025, accessed August 7, 2025) (reporting that "[s]everal Arizona e-cigarette retailers claim they were duped into signing a petition to ban flavored vapes in the state by a representative of Altria"); https://www.azcentral.com/story/news/politics/legislature/2025/04/08/e-cigarette-sellers-big-tobacco-lied-flavored-vape-ban/82801709007/ (Apr. 8, 2025, accessed August 7, 2025) (referencing visits by "Altria representatives" at various retail stores in Phoenix, AZ, Fountain Hills, AZ, and Chandler, AZ).

44.     On information and belief, Altria Group Distribution Company has a registered agent located in Scottsdale, Arizona. *See, e.g.*, https://ecorp.azcc.gov/BusinessSearch/BusinessInfo?entityNumber=F15302116 (accessed August 7, 2025) (listing United Agent Group Inc. as registered agent, with address "3260 N Hayden Rd #210, SCOTTSDALE, AZ 85251, USA").

45.     On information and belief, NJOY, LLC has a registered agent located in Phoenix, Arizona. *See, e.g.*, https://ecorp.azcc.gov/BusinessSearch/BusinessInfo?entityNumber=1921695 (accessed August 7, 2025) (listing United Agent Group Inc. as registered agent, with address "8825 N 23RD AVENUE, SUITE 100, PHOENIX, AZ, 85021, USA").

46.     On information and belief, NJOY was acquired by Altria Group, Inc. on June 1, 2023, and is now a wholly owned subsidiary of Altria Group, Inc. *See* https://investor.altria.com/press-releases/news-details/2023/Altria-Completes-Acquisition-of-NJOY-Holdings-Inc.-Updates-2023-Full-Year-EarningsGuidance/default.aspx.

47.     This Court has personal jurisdiction over Defendants. On information and belief, Defendants have conducted and continue to conduct business in the State of Arizona and this District. Further, Defendants, directly and/or through subsidiaries and/or intermediaries (including distributors, retailers, franchisees, and others), have committed and continue to commit acts of patent infringement and/or have contributed to or induced acts of patent infringement by others in this District and elsewhere in the United States. For example, NJOY Daily products are available for sale at retailers in Arizona. *See* https://www.arizonacomplete.com/pc_product_detail.asp?key=98CBC04F9464492C8A3 7226ED35E6452 (accessed August 7, 2025, listing NJOY Daily Rich Tob 4.5% 5/1 SKU 100580 for sale at Arizona Complete Candy & Tobacco 6020 N. 55th Ave. Phoenix, AZ 85301); see, also, https://www.arizonacomplete.com/pc_product_detail.asp?key=719E0E1EE1F8415CA84 08316131439C9 (accessed August 7, 2025, listing NJOY Daily Rich Tob 6% 5/1 SKU 100581 for sale at Arizona Complete Candy & Tobacco 6020 N. 55th Ave. Phoenix, AZ 85301).   As such, Defendants have purposefully availed themselves of the privilege of conducting business within this District; have established sufficient minimum contacts with this District such that they should reasonably and fairly anticipate being haled into court in this District; and have purposefully directed activities at residents of this State. At least a portion of the patent infringement claims alleged herein arise out of or are related to one or more of the foregoing activities.

## V.     THE TECHNOLOGY AND PRODUCTS AT ISSUE

### A.     Background of the Technology

48.     The technology at issue generally relates to the design and operation of vaporizer devices, also known as ENDS devices, and cartridges, used therewith, that contain e-liquid nicotine salt formulations.

49.     Nicotine liquid-based ENDS products generally vaporize a liquid solution containing nicotine (also called e-liquid) and permit the user to inhale recondensed droplets of that solution as an aerosol. An e-liquid based ENDS product typically

includes a storage compartment that holds the liquid nicotine solution, a heating element that vaporizes the liquid to generate an aerosol, and a battery and circuitry to power and operate the heating element.

### B. Products at Issue

50.    The products at issue are vaporizer devices such as nicotine delivery systems (ENDS), cartridges used therewith, and components of such devices and cartridges (cartridge housings, heater components (sometimes referred to as atomizers), chargers, batteries), and subassemblies of the foregoing.

## VI.    THE ASSERTED PATENT[4]

51.    JLI asserts one patent in this Complaint: U.S. Patent No. 12,156,533 ("the '533 patent"). This patent is briefly discussed below.

### A.    The '533 Patent

52.    U.S. Patent No. 12,156,533 was duly and lawfully issued by the United States Patent and Trademark Office on December 3, 2024 to JUUL Labs, Inc.

53.    The '533 patent is set to expire on May 6, 2034.

54.    The '533 patent is titled "Nicotine Salt Formulations for Aerosol Devices and Methods Thereof," names Adam Bowen and Chenyue Xing as co-inventors, and issued from U.S. Patent Application No. 17/171,976, which was filed on February 9, 2021. The '533 patent is a continuation of application No. 14/925,961, filed on October 28, 2015 (now U.S. Patent No. 10,952,468), which is a continuation of application No. 14/271,071, filed on May 6, 2014 (now abandoned). The '533 patent claims priority to at least provisional application No. 61/820,128, filed on May 6, 2013, and provisional application No. 61/912,507, filed on December 5, 2013.

55.    A true and correct copy of the certified '533 patent is attached as Exhibit 1.

---

[4] All non-technical descriptions of the patent herein are presented to give a general background of the patent. These statements are not intended to be used nor should they be used for purposes of patent claim construction. JLI presents these statements subject to and without waiver of its right to argue that no claim construction is necessary, or that claim terms should be construed in a particular way under claim interpretation jurisprudence and the relevant evidence.

56.     A true and correct copy of the certified patent assignment records from the named inventors to JUUL Labs, Inc. is attached as Exhibit 2. As shown therein, the named inventors assigned their interest to each of the original patent applications which ultimately led to the issuance of the '533 patent. In particular the named inventors assigned their interest in U.S. Patent Application No. 14/271,071 (to which the '533 patent claims priority as a continuation) to Ploom, Inc. in an assignment executed on May 14, 2014 (Reel/Frame 069063/0653). As further shown therein, Ploom, Inc. changed its name to PAX Labs, Inc. effective February 11, 2015 (Reel/Frame 069268/0409), and PAX Labs, Inc. changed its name to JUUL Labs, Inc. effective June 30, 2017 (Reel/Frame 069268/0407).

## VII.    DEFENDANTS' INFRINGEMENT OF THE ASSERTED PATENT

57.     As discussed above, the products at issue are vaporizer devices, also known as ENDS, cartridges used therewith, and components of such devices and cartridges (cartridge housings, e-liquid nicotine salt formulations, heater components (sometimes referred to as atomizers), chargers, batteries), and subassemblies of the foregoing.

58.     All conditions precedent to JLI's right to recover have been performed, waived, or otherwise satisfied.

### A.    COUNT I – Infringement of the '533 Patent

59.     JLI hereby incorporates the allegations of the foregoing paragraphs as fully set forth herein.

60.     Upon information and belief, Defendants have infringed and continue to directly infringe, either literally or under the doctrine of equivalents, at least claims 1-8 and 10 of the '533 patent by directly or indirectly making, using, selling, offering for sale in, and/or importing into the United States the products at issue.

61.     An exemplary claim chart comparing independent claim 1 of the '533 patent to an exemplary product at issue (the NJOY Daily) is attached as Exhibit 3.  NJOY offers its Daily series e-cigarette products with e-liquid in Rich Tobacco, Extra Rich Tobacco, Menthol, and Extra Menthol, containing e-liquid formulations having 4.5% and

6% nicotine by weight, including in this District. *See, e.g.*,

https://www.electrictobacconist.com/product/njoy-daily-extra-menthol-8245. In addition,

on information and belief, NJOY either has already developed or is developing additional

products, which on information and belief also infringe the '533 patent for similar

reasons as identified in exemplary claim chart at Exhibit 3.

62.    On information and belief, Defendants also indirectly infringe the '533

patent by inducing and/or contributing to infringement. On information and belief,

Defendants have had and have actual knowledge of, or were willfully blind to, the '533

patent, including through at least: (1) the marking of JUUL Device and/or JUULpod

products with the number of the '533 patent and the listing of the number of the '533

patent on JLI's website in connection with such products, *see, e.g.*,

https://www.juullabs.com/us-and-international-patents/; (2) the filing of this Complaint

and the companion action in the International Trade Commission also detailing

allegations of infringement of the Asserted Patent against Defendants, and (3) Altria's

recognition of the power of JLI's innovation, and as a prior investor in JLI, its full access

to study JLI's IP portfolio, including its patents and pending applications, and praise of

the nicotine salt technology at issue in this case as a key driver of the JUUL System's

success and its ability to disrupt the traditional tobacco market. *See also, e.g.,* ¶¶ 25-27,

59-60, *supra*, 63-69, *infra*.

63.    On information and belief, Defendants knowingly induced, induce, and/or

contribute to direct infringing acts by others with specific intent to encourage

infringement. For example, Defendants actively induce customers' direct infringement by

contracting with and encouraging distribution partners, contractors, retailers, and/or

customers to make, use, offer to sell, sell, and import in the United States products that

infringe the Asserted Patent. For example, according to the FDA regarding NJOY LLC's

PMTA filings, "current adult cigarette smokers are the applicant's stated intended users."

*See, e.g.*, https://www.fda.gov/media/165234/download (accessed August 7, 2025); *see

also* Exhibit 4 at 2 (NJOY Daily packaging stating that the product is for use by current

adult smokers). Further, as noted by the FDA, Defendants "[m]aintain[] [d]istributor and [r]etailer [p]olicies that govern the selection and oversight of tobacco retailers that carry NJOY Daily products[.]" *See, e.g.*, https://www.fda.gov/media/165233/download (accessed July 18, 2025). In addition, Defendants "receiv[e] inbound customer service communications" and "[c]onduct[] quarterly audits of point-of-sale signage located in retail chains that carry NJOY to determine whether only NJOY-approved trade marketing materials are being utilized." *Id*. Defendants know, or should have known, that these acts directly infringe the Asserted Patent because of, for example, the infringement allegations and evidence provided in connection with this Complaint, the other aforementioned complaints, and evidence and allegations therein.

64.    On information and belief, Defendants induce infringement of the Asserted Patent under 35 U.S.C. § 271(b) by knowingly and intentionally inducing others to directly infringe, literally or under the doctrine of equivalents, the Asserted Patent. On information and belief, the products at issue are specially designed to contain features that infringe the Asserted Patent, and the products at issue have no substantial uses other than ones that infringe the Asserted Patent. On information and belief, Defendants actively promote the sale, use, and importation of the products at issue in marketing materials, technical specifications, data sheets, webpages, press releases, and user manuals, as well as through their sales and distribution channels that encourage infringing sales, offers to sell, and importation of the products at issue. *See, e.g.*, ¶ 63, *supra*, and ¶ 65 *infra*. Through these actions, Defendants have had the specific intent to induce, or were willfully blind to inducing infringement of the Asserted Patent. On information and belief, Defendants continue to engage in these activities with knowledge of the Asserted Patent and knowledge that the induced acts constitute infringement.

65.    On information and belief, Defendants have had and have actual knowledge of, or were willfully blind to, the Asserted Patent, including through at least: (1) the marking of JUUL Device and/or JUULpod product packages with websites relating to JUUL's patented intellectual property, and the listing of the numbers of the Asserted

1    Patent on JLI's website in connection with such products, *see, e.g.*,

2    https://www.juullabs.com/us-and-international-patents/ (accessed July 22, 2025); and

3    (2) the filing of this Complaint and the companion action in the International Trade

4    Commission also detailing allegations of infringement of the Asserted Patent against

5    Defendants, and (3) Altria's recognition of the power of JLI's innovation, and as a prior

6    investor in JLI, its full access to study JLI's IP portfolio, including its patents and

7    pending applications, and praise of the nicotine salt technology at issue in this case as a

8    key driver of the JUUL System's success and its ability to disrupt the traditional tobacco

9    market. *See also, e.g.,* ¶¶ 25-27, 59-64, *supra,* 66-69, *infra.* Defendants' specific intent to

10   induce infringement is further evidenced by Altria's own public statements regarding its

11   acquisition of NJOY. When Altria announced it would deploy its wholly-owned Altria

12   Group Distribution Company to distribute NJOY's products, it was forming the specific

13   intent to distribute products that directly infringe JLI's intellectual property to others to

14   induce infringement on a national scale. *See, e.g.,* https://investor.altria.com/press-

15   releases/news-details/2024/NJOY-Submits-Premarket-Tobacco-Product-Applications-to-

16   the-FDA-for-NJOY-ACE-2.0-Featuring-Bluetooth-enabled-Access-Restriction-

17   Technology/default.aspx (accessed July 22, 2025). Altria's subsequent expansion of

18   NJOY's retail footprint to over 100,000 stores is a direct and intentional act of

19   encouraging and facilitating infringing sales by downstream retailers, with full

20   knowledge of JLI's patent portfolio. *Id.*

21        66.    On information and belief, Defendants knowingly induced, induce, and/or

22   contribute to direct infringing acts by others with specific intent to encourage

23   infringement. For example, Defendants actively induce customers' direct infringement by

24   contracting with and encouraging distribution partners, contractors, retailers, and/or

25   customers to make, use, offer to sell, sell, and import in the United States products that

26   infringe the Asserted Patent. For example, according to the FDA regarding NJOY LLC's

27   PMTA filings, "current adult cigarette smokers are the applicant's stated intended users."

28   *See, e.g.*, https://www.fda.gov/media/165234/download (accessed August 7, 2025); *see*

*also* Exhibit 4 at 3 (NJOY Daily packaging stating that the product is for use by current adult smokers). Further, as noted by the FDA, Defendants "[m]aintain[] [d]istributor and [r]etailer [p]olicies that govern the selection and oversight of tobacco retailers that carry NJOY Daily products[.]" *See, e.g.*, https://www.fda.gov/media/165233/download at 28-29 (accessed August 7, 2025). In addition, Defendants "receiv[e] inbound customer service communications" and "[c]onduct[] quarterly audits of point-of-sale signage located in retail chains that carry NJOY to determine whether only NJOY-approved trade marketing materials are being utilized." *Id*. Defendants know, or should have known, that these acts directly infringe the Asserted Patent because of, for example, the infringement allegations and evidence provided in connection with this Complaint, the other aforementioned complaints, and evidence and allegations therein.

67.     On information and belief, Defendants induce infringement of the Asserted Patent under 35 U.S.C. § 271(b) by knowingly and intentionally inducing others to directly infringe, literally or under the doctrine of equivalents, the Asserted Patent. On information and belief, the products at issue are specially designed to contain features that infringe the Asserted Patent, and the products at issue have no substantial uses other than ones that infringe the Asserted Patent. On information and belief, Defendants actively promote the sale, use, and importation of the products at issue in marketing materials, technical specifications, data sheets, webpages, press releases, and user manuals, as well as through their sales and distribution channels that encourage infringing sales, offers to sell, and importation of the products at issue. *See, e.g.*, ¶ 63, *supra*. Through these actions, Defendants have had the specific intent to induce, or were willfully blind to inducing infringement of the Asserted Patent. On information and belief, Defendants continue to engage in these activities with knowledge of the Asserted Patent and knowledge that the induced acts constitute infringement.

68.     On information and belief, Defendants also contribute to infringement of the Asserted Patent under 35 U.S.C. § 271(c) by providing or selling the products at issue to others. The products at issue are specially designed and made for use in an infringing

manner and are not staple articles of commerce suitable for any substantial non-infringing use. On information and belief, Defendants continue to engage in these activities with knowledge of the Asserted Patent and knowledge that their acts contribute to infringement.

69.     On information and belief, Defendants, through at least their parent Altria—a giant in the combustible tobacco industry—recognized the power of JLI's innovation and the disruption to their core business. As a prior investor in JLI, Altria had full access to study JLI's IP portfolio, including its patents and pending applications, and praised the nicotine salt technology at issue in this case as a key driver of the JUUL System's success and its ability to disrupt the traditional tobacco market. Altria's own public statements reflect its deep understanding of the value and strategic importance of JLI's technology. *See also, e.g.,* ¶¶ 25-27, 59-68, *supra*. JLI is therefore entitled to the full range of legal and equitable relief, to remedy Defendants' willful conduct, and a permanent injunction to prevent future infringement.

**VIII.   DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs hereby demand a trial by jury as to all issues so triable.

**IX.    PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully pray for the following relief:

(a)     a judgment that Defendants have infringed the Asserted Patent;

(b)     a judgment that Defendants' infringement of the Asserted Patent is willful;

(c)     damages adequate to compensate JLI for the Defendants' infringement of the Asserted Patent pursuant to 35 U.S.C. § 284;

(d)     entry of a permanent injunction enjoining Defendants from directly or indirectly making, using, selling, offering to sell, and/or importing the products at issue, and/or otherwise infringing, or inducing or contributing to the infringement of the Asserted Patent;

(e)     pre-judgment interest;

(f)    post-judgment interest;

(g)    a declaration that this action is exceptional pursuant to 35 U.S.C. § 285, and an award to JLI of its attorneys' fees, costs, and expenses incurred in connection with this action; and

(h)    such other relief as the Court deems just and equitable.


RESPECTFULLY SUBMITTED this 8th day of August, 2025.

**COPPERSMITH BROCKELMAN PLC**

By:: /s/ Malvika A. Sinha
  Malvika A. Sinha
  Kelleen Mull

**MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO, P.C.**

  Michael T. Renaud*
  Adam S. Rizk*
  Matthew A. Karambelas*

*Attorneys for Plaintiff Juul Labs, Inc.*

*\*Pro Hac Vice Application Forthcoming*